THE CHICAGO AND ALTON RAILROAD COMPANY

*v.*

CATHERINE CULLEN, Admx.

| 187 | 523 |
| 95a | ¹626 |

*Opinion filed October 19, 1900.*

1. RAILROADS—*what is not contributory negligence by section foreman.* A section foreman, who, upon the approach of a freight train, steps aside to a distance ordinarily safe, is not, as a matter of law, guilty of negligence contributing to an injury from a loose car door, which was swinging out from the train and which he did not see in time to avoid such injury.

2. SAME—*right of section foreman to assume that car doors are fastened.* If a section foreman, in the line of his employment, is in the exercise of reasonable care for his safety, he may assume that the railroad company will use reasonable care to see that the car doors on its trains are in a reasonably safe condition, and the jury may consider such fact when determining whether the section foreman was in the exercise of due care.

*Chicago and Alton Railroad Co. v. Cullen,* 87 Ill. App. 374, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding.

A. E. DEMANGE, (WILLIAM BROWN, of counsel,) for appellant.

SAMPLE & MORRISSEY, for appellee.

Per Curiam: This is an appeal from a judgment of affirmance by the Appellate Court against appellant, in favor of appellee. The Appellate Court filed with its judgment the following statement of the case and opinion, by Wright, P. J.:

"In this action the appellant was sued by appellee for damages by negligence resulting in the death of John Cullen intestate. The declaration, consisting of two counts, alleges that John Cullen was section foreman for appellant over a portion of the track, including that part running two miles north of McLean, Illinois, and while in discharge of his duties as such, in the exercise of ordinary care for his own safety, appellant negligently ran a freight train over that section of track with one of the car-doors of a freight car in defective condition and out of repair, so that it swung out at the bottom from the side of the car when the train passed intestate and struck and killed him, leaving his widow and four children deprived of support. Trial by jury resulted in a verdict and judgment against appellant for $5000, from which this appeal is taken to effect its reversal, and it is urged as error that the court admitted improper evidence and excluded proper testimony; that the court denied the motion and refused the instruction, offered at the close of appellee's testimony and again at the close of all the testimony, to direct a verdict for appellant; that the court gave improper, refused proper and modified proper instructions.

"The evidence shows that while deceased, in the discharge of his duties as section foreman, was upon the track about a mile north of McLean, a freight train approached, and the deceased, and a workman with him, stepped off to the side away from the track several feet, to the distance usually taken by workmen of that class when trains passed. As the engine went by him the deceased recognized and saluted a friend in the cab, whom he followed with his eyes, and directly his companion,

the workman, gave a shout of warning and ducked his head. At the same time a boy walking upon the track near by, seeing the danger, quickly swerved out of the way. Almost instantly, and before the deceased became aware of any peril, a loose door hanging from the side of a furniture car, swinging out, struck him in the back of the head and killed him. This car-door was of a common sliding pattern, hung from the top, its bottom coincident with the floor of the car and confined to its proper place inside by a strip or band of iron, out of which it was possible for the door to jump or bound by conjunction of favorable circumstances, in which event the bottom of the door would swing to and from the side of the car with the wind pressure and swaying of the car in motion. When closed, the door could be fastened by hasp and staple. It further appears that while the train was yet several miles distant from the place of the injury a brakeman discovered this door in its loose condition, swinging in and out, the bottom of the door being free from its fastening, the hasp loose from the staple. The discovery was made on the occasion of the train breaking in two and after the coupling had been made and the train again started. An immediate stop was made, and the brakeman, assisted by others, made an ineffectual attempt to close the door in the usual manner and fasten it. The conductor of the train was apprised of the condition of the door, and he, with the two brakemen, replaced the door in its hangings, but on account of some disorder in the appliance it could not be made to shut tightly so the hasp could be fastened, a space of two inches being left open. It is explained by them that lack of proper tools caused the failure to completely remedy this defect. Having arrived at Atlanta station, seven miles before Cullen was struck, a stop was made, and during the stay of the train here the conductor again examined the door, and finding it in the same condition as when left by him before, no further attempt was made to

fasten it. After leaving Atlanta no stop was made until after Cullen was struck, and none of the train crew saw the accident. The 'head brakeman, who rode on the engine, and the fireman, both testify they kept watch back over the train and did not see the door again swinging until after the accident.

"Geometrical demonstration is invoked to prove that Cullen must have stood within three feet seven inches of the nearer rail when he was struck, and the calculation is based upon the assumption that the car-door hung by both corners at the top, properly. Very much strong proof,—and the preponderance, we consider,—is against this contention and to the effect that the car-door hung by one corner only, and that Cullen stood more than five feet from the nearer rail. His workman stood the same distance away. They were men of long experience in the line of their employment. On the approach of this train they withdrew to a distance ordinarily safe,—about the same space from the rails that was customary and usual. Having done that, in the absence of contributory negligence otherwise, we are impelled to conclude that the deceased was in the exercise of ordinary care for his own safety.

"As against the charge of negligence on the part of appellant regarding the condition of the car-door, it is said appellant had neither time to discover the defect nor actual notice of it. The answer to this is, that the trainmen, including the conductor, who were in charge of the train, not only knew of the defective condition of the door but endeavored to remedy it, and concluded that they had sufficiently secured it when they desisted from their efforts to do so. It was the master's duty to use reasonable care to remedy this defect so long as the door formed a part of the train, or upon knowledge of such defect to desist in the use of it if it was dangerous to others,—which latter fact the accident demonstrated. While it may be true the master, or some employee hav-

ing the relation of vice-principal, had neither time to discover the defect nor actual notice of it, yet the trainmen were not fellow-servants of the deceased, and it was their duty, upon discovering the defective condition of the car, to report it to the master for repair and to cease the use thereof until it was restored to a reasonably safe condition. This they neglected to do, and in consequence thereof Cullen was killed. As between appellee and appellant, the latter is responsible for such negligence of its servants in charge of the train. Whether appellant's servants who managed the train were guilty of negligence being a question of fact determined against appellant by the jury, it only remains to consider the evidence to say that conclusion was warranted. Having so considered the evidence we feel that such a conclusion was irresistible.

"It is insisted that the court erred in permitting testimony concerning a switch-stand at Shirley, Illinois, some five miles from the scene of the accident, which this car door struck. We find evidence of that fact in the direct testimony of two of appellant's witnesses, and while the evidence complained of is not strictly material to the main issues involved and might well have been excluded, it merely elucidates and explains the circumstances in detail. Had the evidence produced by appellant upon this point in chief been withdrawn a different question might have been presented, but in the present condition of the record it is difficult to see that any harm was done by the admission of the evidence. Indeed, there was none.

"The second instruction for appellee, which it is said was erroneously given, we have carefully examined. It states the rule to be, that if Cullen, in the line of his employment, was in the exercise of reasonable care for his own safety, then he had the right to assume, in the absence of notice to the contrary, that appellant would use reasonable care and diligence to see that the car doors on a train running upon the track of appellant were in

a reasonably safe condition, and that the jury have the right to take that into consideration, in connection with all the facts and circumstances, in determining whether or not, at the time he was injured, Cullen was exercising due and reasonable care for his personal safety. The force of criticism against this instruction is not seen. It does not single out any particular fact in the proof to appellant's prejudice, but is merely directed to the question whether the deceased was in the exercise of ordinary care, and states only general rules applicable to the determination of it, so that we cannot say any harmful error to appellant resulted from giving it.

"It is quite needless to allude to the motion and instruction offered to direct a verdict for appellant, which the court properly refused. That no error exists in any of the other instructions, in giving, refusing or modifying them, is also our conclusion upon their examination, although fifteen of appellant's offered instructions were refused while sixteen were given.

"We think the case was fairly presented to the jury for the appellant, and are convinced that the judgment of the trial court must stand."

The briefs and arguments filed here are manifestly the same as those used in the Appellate Court, and discuss at length questions not open to review in this court. We have considered the points made on the assignment of errors of law and consulted the authorities cited, so far as deemed necessary, and have reached the conclusion that such questions of law are all properly disposed of by the foregoing opinion. It will therefore be adopted as the opinion of this court, and the judgment below affirmed.                    *Judgment affirmed.*